# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

ABDUL SHARIFF,

                        Plaintiff,

-vs-                            DECISION and ORDER

THOMAS POOLE, et al.,                      05-CV-6025-CJS

                        Defendants.

---

## INTRODUCTION

Pursuant to 42 U.S.C. § 1983, the Plaintiff Abdul Shariff ("Shariff"), an inmate in the New York State Department of Correctional Services ("DOCS") at Five Points Correctional Facility ("Five Points"), is suing the following current or former DOCS employees: Superintendent Thomas Poole ("Poole"), Deputy Superintendent David Napoli ("Napoli"), Lieutenant Brian McCauley ("McCauley"), Lieutenant Peter Ficchi ("Ficchi"), Corrections Officer Frank Rossbach ("Rossbach"), Corrections Officer Michael O'Hara ("O'Hara"), Corrections Officer Lucien Leroux ("Leroux"), and Corrections Officer Tracy Ault ("Ault").

Plaintiff is proceeding *pro se* and has been granted leave to proceed *in forma pauperis*. Now before the Court is Defendants' Motion for Summary Judgment. For the reasons stated below, the application is granted in part and denied in part.

**BACKGROUND**

As of May 23, 2003, Plaintiff was an inmate at Five Points, a maximum security prison. (Complaint, ¶ 15.) Plaintiff is a paraplegic and wheelchair bound. (Shariff Mem. in Opposition at 2.) On January 1, 2004, Plaintiff became an elected member of the Five Points Inmate Liaison Committee ("ILC"). (Compl. ¶ 21.)[1] The ILC is a group of elected inmates who work with the facility administration to address inmate issues. (Shariff Dep. Ex. A at 6.) During January 2004, Plaintiff and other ILC members added "officer brutality on inmates" to the ILC agenda. ILC staff advisor McCauley discouraged this addition, and the officer brutality issue was not included in the finalized agenda. (Shariff Dep. Ex. A at 11, 14-15, 19.) On February 16, 2004, Plaintiff was interviewed by McCauley regarding a letter he had sent to Commissioner Glenn Goord ("Goord"). The letter complained of restrictions placed on the ILC, mainly in terms of the issues that they were allowed to address.

On February 17, 2004, Leroux and another officer entered the ILC office and confiscated a grievance that Plaintiff was typing. (Dep. Ex. A at 21–32). Plaintiff claims Leroux informed him that ILC staff advisor Ficchi had directed staff to review what the ILC inmates were typing. (Shariff Dep. Ex. A at 11, 28, 32.) Following the confiscation, Leroux wrote a misbehavior report, which was later dismissed, and Plaintiff filed a grievance. (Shariff Dep. Ex. A at 29–32.) Plaintiff testified at his deposition that up until that time, ILC inmates had been allowed to type anything they had to type. (Shariff Dep. 27.)

---

[1]The complaint is verified.

On February 23, 2004, Ault stopped Plaintiff as he was entering his cell and expressed his disapproval of another issue to be raised by the ILC, which involved "illegal swaps" between officers. (Shariff Dep. Ex. A at 33-39.) Plaintiff explains that what he terms an "illegal swap" occurs when two or more corrections officers switch scheduled duties without changing the official schedule. Plaintiff chose to address this issue following alleged assaults on inmates by officers, where the inmates in question claimed to have been assaulted by a particular officer. However, when the complaints were investigated, the inmates were informed that the officer had not been working on the day of the alleged assault. (Shariff Dep. Ex. A at 37.) During the February 23 conversation, Ault told Plaintiff to drop the issue. When Plaintiff refused, Ault threatened him, stating that "being that you's [sic] want to raise that issue, it's war now, officers against the inmates." (Shariff Dep. Ex. A at 34–38.) The exchange was recorded by the facility's video and audio system. Plaintiff addressed the incident in a February 25, 2004, complaint to Superintendent Poole. Poole determined in a March 2, 2004, letter that Ault "was out of order discussing ILC issues with you that had not yet been addressed by the Administration and the ILC. Although I do not interpret his remarks to be threatening, I do consider them to be totally inappropriate." (Shariff Mem. in Opp. Ex. B.)

The ILC was also involved in a program referred to as "Click-Click," in which inmates could have their photographs taken. (Shariff Dep. Ex. A at 61–68) When the "Click-Click" program memorandum was posted, it contained an erroneous statement (inmates may not be photographed while seated). (Shariff Dep. Ex. A at 63.) This discrepancy was discussed with Rossbach, who Plaintiff claims changed the memorandum, as well as with McCauley and Ficchi. The discrepancy was ultimately resolved at the

next ILC meeting. (Shariff Dep. Ex. A at 62–68.) Plaintiff maintains that after the "Click-Click" issue, Rossbach and O'Hara harassed him by repeatedly inspecting his folder and pat frisking him. (Shariff Dep. Ex. A at 68–76.)

On June 11, 2004, Plaintiff was given a misbehavior report by Rossbach, claiming that he had been out of place and had lied. (Shariff Dep. Ex. A at 76–77.) Plaintiff claims Rossbach stated that he was writing him up because Plaintiff had written up Rossbach following the "Click-Click" issue. (Shariff Dep. Ex. A at 78.) Plaintiff states that, although the misbehavior report was dismissed the next day, he was held in keeplock for approximately twenty-two hours. (Shariff Dep. Ex. A at 78–81.)

Plaintiff also contends that his cell was searched and "trashed" on March 3, 4, 7, and 15, April 8, May 29, June 7 and 16, July 23, August 4, and September 5 and 10, 2004. (Shariff Dep. at 42–60; Compl. ¶¶ 34, 36, 46, 48, 55.) He filed a grievance regarding the March 3, 2004 and the March 7, 2004 cell searches, and testified at his deposition that the searches were ordered by Napoli. (Shariff Dep. at 43, 59–60, 92.) He also blames Poole, in his supervisory capacity, for the cell searches. (Shariff Dep. Ex. A at 59–60, 92.) Plaintiff alleges that the cell searches were in retaliation for his complaints and grievances, and that the chronology of the events presents evidence of retaliation. (Shariff Dep. Ex. A at 55.) Further, Plaintiff alleges that on June 11, 2004, Defendant Corrections Officer Frank Rossbach ("Rossbach") retaliated against Plaintiff for having written a grievance on June 4, 2004, alleging officer brutality. In that regard, Plaintiff contends that Rossbach wrote a "false misbehavior report charging Plaintiff with two charges…. Plaintiff was found not guilty on both charges" and that Rossbach said, "Well, I'm writing you up because you wrote me

up." (Compl. ¶¶ 49, 52; Shariff Dep. 78.) During the summer of 2005, Plaintiff resigned from ILC. (Shariff Dep. Ex. A at 90–91.) Plaintiff left Five Points on March 27, 2006.

## STANDARDS OF LAW

### *Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*,

988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e).

Additionally, when a plaintiff is moving pro se, his pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the pro se plaintiff must still establish the existence of genuine issues of material fact to survive a motion for summary judgment; the pro se party's "bald assertion," when unsupported by evidence, is insufficient. *Lee v. Coughlin*, 904 F. Supp. 424, 429 (S.D.N.Y. 1995).

In their Notice of Motion for Summary Judgment (Docket No. 25), filed on May 1, 2007, Defendants included the following language, in conformance with the requirement to "provide the *pro se* party with notice of the requirements of Rule 56 of the Federal Rules of Civil Procedure, and the consequences of noncomliance therewith…," *Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001):

> PLEASE BE ADVISED, that pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, you may not simply rely upon the complaint, but you must respond, by affidavits or as otherwise provided in the rule, setting forth

further specific facts showing that there are genuine issues of material facts for trial. Any factual assertions in our affidavit will be accepted by the Court as being true unless you submit affidavits or other documentary evidence contradicting our assertions. If you do not respond to the defendants' motion as described above, summary judgment, if appropriate, may be entered against you. If summary judgment is entered against you, your case against the moving parties will be dismissed.

PLEASE BE FURTHER ADVISED, that pursuant to Local Rule 56 of the Western District of New York, you must include a separate, short and concise statement of any material facts as to which you contend there exist a genuine issue for trial. In the absence of such a statement, all material facts set forth in defendants' Local Rule 56 Statement will be deemed admitted.

(Def.s' Notice of Motion 1–2.)

### Civil Rights Claims: 42 U.S.C. §1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).

## DISCUSSION

In their motion for summary judgment, Defendants argue the following: (1) Shariff's conspiracy claims are unsupported by any evidence; (2) all official capacity claims are barred by the 11th Amendment; and (3) there is no evidence that any retaliatory or adverse actions, motivated by Shariff's protected conduct, were taken.

In his Western District of New York Local Rule of Civil Procedure 56.1 statement, Shariff neither states facts which he contends present an issue to be tried, as required by Rule 56.1, nor does he controvert facts submitted by Defendants. Rather, Plaintiff adds

further details to the statement of facts submitted by Defendants. Defendants did not file a statement in response to these added details. Since Defendants have not refuted these added facts, they are deemed admitted into evidence. Also, as Plaintiff does not controvert material facts or present genuine issues in his Rule 56.1 statement, the Court will consider the questions of fact presented in other sections of his memorandum. He is moving *pro se*, and the Court must interpret his pleadings liberally. *Haines,* 404 U.S. at 520.

### *Conspiracy Claims: 42 U.S.C. §1985(3)*

"To prove a §1985(3) conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999) (citations omitted)*.* "The conspiracy must be motivated by racial or related class-based discriminatory animus." *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 835–37 (1983); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp*., 7 F.3d 1085, 1088 (2d Cir. 1993). Besides failing to show any agreement to act in concert, Plaintiff, who alleges that the defendant corrections officers and their supervisors conspired against him, fails to show that they are acting with a racial or related class-based discriminatory animus. Accordingly, all conspiracy claims are dismissed against Defendants.

### *Retaliation Claims*

In his complaint, Plaintiff alleges that he was retaliated against for exercising his constitutionally protected right to submit grievances and complaints. Specifically, Plaintiff claims that Defendants' retaliatory conduct included verbal threats, false misbehavior reports and destructive cell searches. The Second Circuit has cautioned courts to "examine

prisoners' claims of retaliation with skepticism and particular care" given "the ease with which claims of retaliation may be fabricated." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Recognizing the possibilities for abuse with respect to retaliation claims, the Circuit has insisted "on a higher level of detail in pleading them." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). Consistent with this reasoning, "a complaint of retaliation that is 'wholly conclusory' can be dismissed on the pleadings alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal citations omitted); *see Ifill v. Goord*, No. 03-CV-355S, 2005 WL 2126403 (W.D.N.Y. Sep. 1, 2005) *vacated & remanded on other grounds* 326 Fed. Appx. 625 (2d Cir. Jun. 19, 2009).

To prevail on a retaliation claim, Plaintiff bears the initial burden of showing: (1) the conduct cited as the cause for retaliation is protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected conduct and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). The filing of formal prisoner grievances is protected conduct under the First Amendment. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (prison officials may not retaliate against prisoners for petitioning for redress of grievances); *see Smith v. Woods*, No. 9:03-CV-480, 2006 WL 1133247, at 10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to oral complaints made to correctional officers), *aff'd*, 219 Fed. Appx. 110 (2d Cir. 2007). As such, Plaintiff's allegations that he was subjected to retaliatory conduct for filing staff misconduct grievances satisfy the first element of the retaliation claim. *See Ayers v. Roberts*, No. 05-CV-889A(F), 2008 WL 2079921 (W.D.N.Y. May 15, 2008).

With regard to the second element requiring adverse action, Plaintiff alleges that he was subjected to an excessive number of cell searches, false misbehavior reports, confiscation of legal documents, and verbal threats followed by excessive pat frisking and searching. These actions do not necessarily amount to violations of constitutionally protected rights. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("It is well-settled that the prohibition against unreasonable searches and seizures does not apply to a prison cell."); *Willis v. Artuz*, 301 F.2d 65, 67–69 (2d Cir. 2002); *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) (An inmate has no right to be free from searches of any kind, including those alleged to be "retaliatory"); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. den.*, 485 U.S. 982 (1988).

This does not, though, preclude such incidents from consideration as adverse actions. "An act in retaliation for the exercise of a constitutional right is actionable under § 1983 even if the act when taken for different reasons would have been proper." *Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988); *Arce v. Walker*, 58 F. Supp. 2d 39, 46 (W.D.N.Y. 1999); *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (allegations that corrections officers made threats against inmate for filing prison grievance along with allegation that corrections officers followed through with such threats constitutes adverse action for § 1983 retaliation claim); *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a prison grievance, states a claim under §1983"). However, "only retaliatory conduct that would deter a similarly situated individual

of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted). In this case, the Court determines that laintiff's allegations satisfy the second requisite elements of a retaliation claim.

In evaluating the third element of a retaliation claim, a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff. *Colon*, 58 F.3d at 872–73. Taken together, the circumstantial evidence can create a genuine issue of material fact as to whether retaliation substantially motivated the action. *Rodriguez* 399 F. Supp. 2d at 240; *see also Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) ("where…circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required"); *Gayle* 313 F.3d at 684 ("circumstantial evidence may be…sufficient to raise a genuine issue of material fact [as to a prison official's retaliatory motives] to preclude a grant of summary judgment").

**Corrections Officer Leroux**

As discussed above, in January 2004, Plaintiff, along with other ILC members, attempted to raise the issue of officer brutality on inmates. Plaintiff claims that ILC staff advisor McCauley insisted that the issue be removed from the agenda. (Shariff, Rule 56.1 Statement at 1.) On February 5, 2004, Plaintiff wrote a letter to Goord, complaining about the Five Points administrative reaction to this issue, and of past instances in which ILC representatives had been allegedly "set up" by prison officials. (Shariff Mem. in Opp., Ex. A.) On February 16, 2004, Plaintiff was interviewed by McCauley about the complaint and

the brutality issue. During this conversation, Plaintiff claims that McCauley made indirect threats. (Shariff Dep., Ex. A at 19) On February 17, 2004, the ILC submitted an agenda that omitted the officer brutality issue, but did bring up another controversial issue regarding "illegal swaps" between corrections officers. Later on the same day, Leroux and another unnamed officer entered the ILC office and confiscated an unfinished grievance that Plaintiff was typing. (Shariff Dep., Ex. A at 21–32.) Shariff claims that the grievance pertained to ILC issues, and that Leroux stated he was ordered to review all documents typed by ILC members following a letter sent to Goord. Ficchi allegedly told Leroux to confiscate Plaintiff's grievance and write a misbehavior report. (Shariff, Rule 56.1 at 2.) The report was later dismissed, and Plaintiff filed a grievance regarding the incident.

Plaintiff claims that the confiscation of his unfinished grievance was an adverse action by Leroux in response to prior grievances, meant to discourage him from entering further complaints. Considering the chronological circumstances and the likelihood that such actions would deter protected conduct, the review and confiscation of grievances rises to the level of an adverse action. The Court finds that determining a retaliatory motive in Leroux's actions presents an issue of material fact, and consequently, this cause of action against Leroux cannot be dismissed on summary judgment.

### *Lieutenant Ficchi*

As an ILC staff advisor, Plaintiff claims that Ficchi played a role in instigating adverse action against him. However, Ficchi is only implicated in the retaliation claim by conclusory and hearsay evidence, through his position as ILC advisor and through Plaintiff's claim that Ficci ordered Leroux to confiscate the grievance on February 17, 2004.

(Shariff Dep., Ex. A at 28.) The Court finds that there is insufficient evidence to support a retaliation claim against Ficchi. Accordingly, such claims against him are dismissed.

***Lieutenant McCauley***

Plaintiff sent a February 5, 2004, letter to Goord complaining about Five Points ILC policy (Shariff Mem. in Opp'n, Ex. A at 1) following a conversation with ILC advisor McCauley, during which McCauley told him not to bring up officer brutality on inmates in the monthly ILC agenda. The issue was subsequently removed from the ILC agenda. During a February 16, 2004, conversation with Plaintiff, McCauley expressed his disapproval of Plaintiff's complaint to Goord, as well as other issues that Plaintiff had chosen to address in the ILC, specifically "illegal swapping." Plaintiff claims that McCauley indirectly threatened him, referring to several past ILC members who had allegedly been targets for retaliation by officers. (Shariff Dep., Ex. A at 19) The following day, officials allegedly began monitoring the documents typed by ILC inmates, confiscating one of Plaintiff's unfinished grievances and issuing a misbehavior report, in what Plaintiff claims was an attempt to prevent him from filing further complaints. (Shariff, Rule 56.1 Statement at 2.)

The period of retaliatory action that Plaintiff outlines in his complaint begins with his February 5 letter to Goord. Before that, Plaintiff had not received a misbehavior report in over five years, and had been an honor status inmate at Green Haven for approximately ten years. (Comp. ¶ 20.) Although the confiscation and/or review of items typed by ILC representatives may have fallen within Five Points facility rules, such policies were not commonly exercised prior to February 17, 2004. As such, the confiscation and review of the unfinished grievance constituted an adverse action. Accordingly, there is an issue of

material fact to be tried concerning McCauley's involvement and retaliatory motives. Judgement is denied to Defendants on this issue.

### *Corrections Officer Ault*

As previously indicated, on February 17, 2004, Plaintiff, as ILC vice-chairman, submitted an agenda that complained of "illegal swaps" by officers. On February 23, 2004, Plaintiff entered his housing unit and was approached by Ault. Ault expressed his disapproval of the ILC decision to complain about the "swapping." (Shariff Dep., Ex. A at 33–39.) He then threatened Plaintiff, stating, "being that you's [sic] want to raise that issue, it's war now, officers against the inmates." The exchange was recorded by the facility's video and audio system. Plaintiff addressed the incident in a February 25, 2004, complaint to Superintendent Poole, as well as in a grievance. Poole wrote in a March 2, 2004, letter that Ault "was out of order discussing ILC issues with you that had not yet been addressed by the Administration and the ILC. Although I do not interpret his remarks to be threatening, I do consider them to be totally inappropriate." (Shariff Mem. in Opp'n, Ex. B.)

The next day, March 3, 2004, Plaintiff claims that his cell was searched and "trashed" in retaliation for this complaint. He claims that after the first officer finished searching, another came in and searched the cell again. (Shariff, Rule 56.1 at 2.) Plaintiff filed his grievance on March 4, 2004. (Grievance, Docket No. 26-2, at 14.) His cell was again searched and trashed on March 7, 2004, in response to which he filed another grievance, and then his cell was searched and "trashed" again on March 10, March 15 and April 8. (Shariff, Rule 56.1 at 3.) He claims that these searches stemmed from Ault's February 23 threat of an officer-inmate "war" in retaliation for grievances Plaintiff had filed.

Before this, Plaintiff alleges that he had been subjected to approximately one random cell search every 60-90 days while at Five Points. (Shariff Dep., Ex. A at 41.)

Although a cell search is not considered to be actionable under § 1983, regardless of any retaliatory motives, there exists here a suggestive chronology of grievances, threats, and cell searches, the combination of which would likely "chill a person of ordinary firmness from continuing to engage" in the protected activity at issue here—the filing of grievances. *Islam v. Goord*, No. 05 Civ. 7502(RJH), 2006 WL 2819651 (S.D.N.Y. Sep. 29, 2006). The Court determines that the evidentiary proof raises an issue of material fact concerning Ault's retaliatory motives and involvement, and denies him summary judgment.

***Corrections Officers Rossbach and O'Hara Alleged Harassment***

As already mentioned, the Five Points ILC was responsible for a program referred to as "Click-Click," through which inmates could have their photographs taken for personal purposes (*e.g.* to send to family and friends). (Shariff Dep., Ex. A at 61–68.) In April 2004, Plaintiff discovered that the "Click-Click" program memorandum contained an erroneous statement, that inmates could not be photographed while seated. (Shariff Dep., Ex. A at 63.) This discrepancy was discussed with Rossbach, who allegedly admitted to Plaintiff that he had changed the memorandum, and refused to reinstate the original policy. (Shariff, Rule 56.1 at 3.) Plaintiff then discussed the issue with ILC advisors McCauley and Ficchi. The discrepancy was ultimately resolved at an ILC meeting on April 21, 2004, when the original policy allowing seated poses was confirmed. (Shariff Dep. Ex. A at 62–68).

Plaintiff claims that following his complaints regarding the "Click-Click" program policy changes, Rossbach and O'Hara began harassing him. Specifically, he alleges that Rossbach repeatedly inspected his folder and pat frisked him in an excessive number of

instances, and that O'Hara joined him in such actions. (Shariff Dep. Ex. A at 68–76). In response, Plaintiff filed two complaints. Following his complaints, Plaintiff claims that the harassment continued and intensified, and that he was subjected to another destructive cell search on May 29, 2004. On Friday, June 4, 2004, Plaintiff wrote a complaint to McCauley regarding these and other incidents, and on Monday, June 7, 2004, his cell was allegedly searched and "trashed" again.

On June 11, 2004, Rossbach wrote Plaintiff up in a misbehavior report for being out of place and lying, violations which Plaintiff claims never took place. (Shariff Dep. Ex. A at 76–77.) Plaintiff claims that Rossbach told him that he was writing him up because Plaintiff had written Rossbach up following the "Click-Click" issue. (Shariff Dep. Ex. A at 78.) Plaintiff states that the false misbehavior report was dismissed the next day. (Shariff Dep. Ex. A at 78–81.) Plaintiff was held in keeplock from about 8:05 p.m. through 6:17 p.m. the next day. (Shariff Dep. Ex. A at 80–81.) On June 12, 2004, he claims that Rossbach approached him and stated, "you got around that one but you can be sure that you won't get away the next time." (Compl. ¶ 53.) Plaintiff also claims that his cell was again searched on June 16, July 23, August 4, September 5, and September 10, 2004. (Compl. at 55.)

It is well established in this circuit that false misbehavior reports against a plaintiff constitute an adverse action. *Graham v. Henderson*, 89 F.3d 75, 80-81 (2d Cir.1996). In combination with Shariff's allegations of threats and searches, the evidentiary proof on this motion raises a material issue regarding whether Rossbach was retaliating against Plaintiff. In contrast, the evidence against O'Hara is severely lacking. Allegations that he conducted

excessive pat frisks are, without additional evidentiary support, insufficient to establish adverse action. Retaliation claims against him are dismissed.

***Deputy Superintendent David Napoli***

Plaintiff claims his cell was searched and "trashed" on March 3, March 7, March 10, March 15, May 29, June 7, June 16, July 23, August 4, September 5, and September 10, 2004. (Shariff Dep. Ex. A at 42–60; Compl. ¶¶ 34, 36, 46, 48, 55.) Before joining the Five Points ILC, he claims that his cell was searched five times over a seven month period, and that these searches were not destructive. However, after joining the ILC and submitting various grievances, he claims a total of twenty-nine instances where his cell was searched and "trashed." (Shariff Mem. in Opp'n at 15.) Plaintiff alleges that these searches were ordered by Deputy Superintendent of Security Napoli, and that the cell searches were in retaliation for his having engaged in constitutionally protected conduct, and that the chronology of events implies a retaliatory animus. (Shariff Dep. Ex. A at 43, 59-60, 92.) However, Plaintiff presents no evidence that Napoli ordered the cell searches.

While the Court has determined that these cell searches, occurring within a larger pattern of retaliation, may be considered actionably retaliatory, the evidence implicating Napoli is strictly limited to the chronology of the searches and Plaintiff's conclusions drawn from that chronology. Plaintiff contends that Napoli was aware of his grievances and complaints, and that "upon Poole's response to [Ault's] threat in his memo dated March 2, 2004, on March 3, 2004[,] Napoli commenced and authorized the 'war' [with] multiple destroying cell searches of Plaintiff's cell." Plaintiff's conclusions, though, do not amount to evidentiary proof in admissible form. Accordingly, retaliation claims against Napoli are dismissed.

*Superintendent Poole*

Plaintiff alleges that Poole, as superintendent, was not only aware of his grievances and the retaliatory actions taken against him, but that he also facilitated a "war" against the inmates. (Shariff Mem. in Opp'n at 16.) The Court finds that these claims are wholly unsupported by evidence, and that Plaintiff fails to effectively implicate Poole in any adverse action. Accordingly, Poole is entitled to summary judgment.

*Official Capacity Claims*

Defendants argue that Plaintiff's claims against the individual defendants in their official capacities should be dismissed, as these claims are barred by the Eleventh Amendment. The Supreme Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a state in federal court. *Graham*, 473 U.S. 159 at 169*; see, e.g., Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945). This bar remains in effect when State officials are sued for damages in their official capacity. *Cory v. White*, 457 U.S. 85, 90 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This is so as "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents…." *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

Considering the merits of the current case, the Court finds that there is no issue of material fact concerning the asserted immunity. Accordingly, such claims are dismissed. *Graham,* 473 U.S. 159 at 169 (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (agencies and departments of the state are entitled to assert the state's Eleventh

Amendment immunity); *see also Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 28 n. 1 (2d Cir. 1991) (the Department is an agency of the State, and therefore entitled to assert Eleventh Amendment immunity).

**CONCLUSION**

Accordingly, Defendants' motion for summary judgment is denied in part and granted in part. All claims are against Ficchi, O'Hara, Napoli, and Poole, as are all conspiracy and official capacity claims. The motion is denied in that retaliation claims may go forward against Leroux, McCauley, Ault, and Rossbach.

IT IS SO ORDERED.

Dated: January 20, 2010
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge